IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VISION METALS, INC., et al., | ) | Case No. 00-4205 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| VISION METALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 02-6528 |
| | ) | |
| SMS DEMAG, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

---

## BRIEF OF VISION METALS, INC. IN OPPOSITION TO
## DEFENDANT'S MOTION FOR ABSTENTION
## OR IN THE ALTERNATIVE FOR A STAY OF PROCEEDINGS

---

**DATE: February 19, 2003**

| | | |
|---|---|---|
| Salvatore A. Barbatano | Donald A. Workman | Neil B. Glassman (No. 2087) |
| David B. Goroff | FOLEY & LARDNER | Steven M. Yoder (No. 3885) |
| Frank W. DiCastri | Washington Harbour | Ashley B. Stitzer (No. 3891) |
| FOLEY & LARDNER | 3000 K Street N.W. | THE BAYARD FIRM |
| 321 North Clark Street | Suite 500 | 222 Delaware Avenue |
| Suite 1500 | Washington, DC 20007-5101 | Ninth Floor |
| Chicago, Illinois 60610 | (202) 672-5300 | Wilmington, Delaware 19899 |
| (312) 832-4500 | | (302) 655-5000 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

STATEMENT OF NATURE AND STAGE OF PROCEEDING ................................. 1

SUMMARY OF ARGUMENT ................................................................................... 2

STATEMENT OF FACTS ........................................................................................... 2

    The Defendant Fails to Perform Under The Original Assel Mill Agreement .................... 2

    Failure Of The Assel Mill Leads To The First Settlement Agreement ............................. 3

    Continued Failure Of The Assel Mill Necessitates The Assumption Of The First
        Settlement Agreement ................................................................................................ 5

    Persistent Failure Of The Assel Mill Leads To Yet Another Settlement Agreement ......... 6

    The Defendant's Total Failure To Produce A Working Assel Mill Leads To
        Litigation .................................................................................................................. 7

ARGUMENT .............................................................................................................. 7

I.     THE DEBTOR HAS A RIGHT TO PROSECUTE ITS CHAPTER 5
       AVOIDANCE ACTIONS AGAINST THE DEFENDANT IN THIS COURT ............... 7

II.    THE COURT SHOULD NEITHER ABSTAIN FROM HEARING, NOR STAY,
      ANY OF THE COMPLAINT ACTIONS ........................................................................ 8

    A.     The Settlement Agreements Do Not Contain Arbitration Clauses ......................... 8

    B.     Abstention Is Inappropriate ................................................................................. 8

    C.     A Discretionary Stay Is Inappropriate ................................................................ 13

    D.     The Federal Arbitration Act Does Not Mandate A Stay ....................................... 15

    E.     The Debtor Should Be Granted Leave To Amend The Complaint ........................ 16

CONCLUSION ........................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

Allegaert v. Perot, 548 F.2d 432 (2d Cir.), cert. denied, 432 U.S. 910 (1977)................................16

Gandy v. Gandy (In re Gandy), 299 F.3d 489 (5th Cir. 2002) ................................................10, 11

Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149 (3rd Cir. 1989) ................................................................................................................................16

Insurance Company of North America v. NGC Settlement Trust & Asbestos Claims Management Corp. (In re National Gypsum Co.), 118 F.3d 1056 (5th Cir. 1997) ..........14

Pardo v. Pacificare (In re APF Co.), 264 B.R. 344, 364 (Bankr. D. Del. 2001) (Walsh, J.) ............................................................................................................11, 14, 16

Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.), 278 B.R. 42, 52 (Bankr. D. Del. 2002) (Walsh, J.)........................................................................................9

Trans World Airlines, Inc. v. Karabu Corp., 196 B.R. 711, 715 (Bankr. D. Del. 1996)..............10

West Coast Video Enterprises, Inc. v. Owens (In re West Coast Video Enterprises), 145 B.R. 484, 488 (Bankr. E.D. Pa. 1992) ................................................................................9

## STATUTES

Texas Uniform Fraudulent Transfer Act ............................................................................. passim

9 U.S.C. § 3 ........................................................................................................................15

11 U.S.C. § 101........................................................................................................................2

11 U.S.C. § 363........................................................................................................................7

11 U.S.C. § 365................................................................................................3, 5, 6, 11

11 U.S.C. § 544 ..............................................................1, 7, 11, 12, 15, 16

11 U.S.C. § 546........................................................................................................................11

11 U.S.C. § 547........................................................................................................1, 7

11 U.S.C. § 548 ..........................................................................................1, 7, 11, 14

11 U.S.C. § 549........................................................................................................1, 7

11 U.S.C. § 550 ............................................................................................................. 1, 7, 11

28 U.S.C. § 157 ................................................................................................................. 11

28 U.S.C. § 1334 ....................................................................................................... 9, 11, 12

## STATEMENT OF NATURE AND STAGE OF PROCEEDING

On November 11, 2002, Vision Metals, Inc. (the "Debtor") filed this adversary proceeding seeking to avoid and recover a variety of transactions between the Debtor and the Defendant, SMS Demag, Inc. (the "Defendant") pursuant to a number of theories, including 11 U.S.C. §§ 544, 547, 548, 549, 550, and finally, the Texas Uniform Fraudulent Transfer Act ("TUFTA"). The causes of action arise largely because the Defendant failed to comply with two settlement agreements in which the Defendant promised to provide a working Assel and Stretch Reducing Mill (the "Assel Mill") for the Debtor's Gulf States Tube Division in Texas. The Debtor also seeks a declaratory judgment regarding the effect of its prior assumption of certain Assel Mill agreements with the Defendant.

Several days later, the Debtor filed suit against the Defendant and a related German company in Texas state court for breach of contract and declaratory judgment (the "Texas Litigation"). The Defendant has since removed the Texas Litigation to federal court in Texas, and has moved to dismiss the Texas Litigation on several grounds, including a request for referral to arbitration. Nothing is presently pending in Texas state court.

On January 17, 2003, the Defendant filed its Answer and Affirmative Defenses to the complaint in this adversary proceeding (the "Complaint"). However, on February 5, 2003, the Defendant filed its Motion For Abstention Or In The Alternative For a Stay of Proceedings (the "Motion"), seeking the Court's abstention solely from hearing the Debtor's claim under TUFTA (the "TUFTA Claim"), or in the alternative a stay of the TUFTA Claim or a mandatory stay under the Federal Arbitration Act. The Defendant does not otherwise dispute that this case should go forward and is going forward in this Court.

By this Response, the Debtor submits its objection and opposition to any stay of, or abstention from the TUFTA Claim, or any other issues at stake in this adversary proceeding.

1

## SUMMARY OF ARGUMENT

The Motion should be denied in its entirety because discretionary abstention, or a stay pending arbitration, are completely inappropriate remedies under the circumstances of this case, particularly when two of the three agreements at issue do not contain arbitration clauses! At least nine of the twelve factors the Court must consider for discretionary abstention weigh against abstention in this adversary proceeding. A discretionary stay pending arbitration is inappropriate for the same reasons, but also because the imposition of a stay in this proceeding would completely negate the justification for a stay: to control the Court's docket and conserve judicial resources. A stay would also conflict with many of the central policies underlying the Bankruptcy Code. Finally, the mandatory stay provisions of the Federal Arbitration Act simply do not apply in this case. The Court can better address all of the Defendant's arguments by allowing the Debtor to amend its Complaint herein to include breach of contract and related claims.

## STATEMENT OF FACTS

The Debtor owns and operated its Gulf States Tube Division in Rosenberg, Texas, where it was engaged in the business of manufacturing pipes, tubes and other metal products. The Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), on November 13, 2000 (the "Petition Date").

### The Defendant Fails to Perform Under The
### Original Assel Mill Agreement

Prior to the Petition Date, on December 10, 1997, the Debtor and the Defendant entered into an Agreement for Supply of Equipment for an Assel and Stretch Reducing Mill Project, a true and accurate copy of which is attached to the Complaint as **Exhibit A** (the

"Original Agreement"). Pursuant to the Original Agreement, the Defendant agreed to design, sell, maintain, and supervise the installation of equipment for an Assel and Stretch Reducing Mill (the "Assel Mill") capable of meeting specified performance guarantees, as defined therein (the "Performance Guarantees"). In exchange, the Debtor agreed to pay the Defendant $16,542,000.00 over time. The Assel Mill was to be located at the Debtor's Gulf States Tube Division in Rosenberg, Texas, and was crucial to the success of that division.

The Original Agreement contains an arbitration clause which purports to require the parties to arbitrate disputes "regarding the terms, interpretation, or application of any provision of this Agreement or with respect to the supplies and services rendered thereunder or any other matter relating to this Agreement." Significantly, however, the Debtor has not assumed the Original Agreement under § 365 of the Bankruptcy Code, or otherwise. No subsequent agreement between the parties includes any right to arbitrate, including the First and Second Settlement Agreements (as defined below) which are among the agreements central to the TUFTA Claim.[1]

### Failure Of The Assel Mill Leads To The First Settlement Agreement

The Assel Mill failed to meet the Performance Guarantees prior to the Petition Date. As the Defendant was the only entity capable of servicing or providing technical support for the Assel Mill, or otherwise ensuring that it met the Performance Guarantees, the Debtor had no choice but to seek assistance from the Defendant. On August 17, 2000, the Defendant

---

[1] In its Motion, the Defendant chooses to ignore the full extent of the relationship between the Debtor and the Defendant, and thereby fails to accurately describe the Debtor's causes of action against the Defendant. See, e.g. Motion at ¶ 12, wherein the Defendant pays mere lip service to the substance of this lawsuit: "In both this action and the Texas Action, Debtor seeks the return of all or a substantial portion of the purchase price of the assel mill from SMS."

convinced the Debtor to enter into a settlement agreement, a true and accurate copy of which is attached to the Complaint as **Exhibit B** (the "First Settlement Agreement").

Pursuant to the First Settlement Agreement, the Defendant agreed, among other things, not to collect the final $864,300.00 payment due from the Debtor for the Assel Mill, and to provide continued assistance and support to the Debtor in order to finally bring the Assel Mill in compliance with the Performance Guarantees. For and in reliance upon the Defendant's representation, the Debtor provided a Certificate of Final Acceptance to the Defendant and purported to release, or otherwise limit its damages for, claims it had against the Defendant in exchange for Defendant's compliance with the Certificate's terms (the "First Settlement Transfers").[2]

The First Settlement Agreement purports to supersede the Original Agreement: "Both Parties declare that with exception of the claims and / or obligations listed under the present Claim Settlement Agreement no further claims and / or obligations shall exist between [the Debtor] and [the Defendant]".[3] **Importantly, the First Settlement Agreement does not contain an arbitration clause.** It does provide as follows:

- The last installment payment due from the Debtor to the Defendant would not be paid, "to compensate the extra costs occurred on [the Debtor's] side and caused by [the Defendant] during the erection and commissioning of the Assel and Stretch Reducing Mill Project";

- The Defendant agreed to send "adequate personnel" to the Debtor's Texas plant to assist in the operation of the Assel Mill;

- The Debtor must pay for spare parts in four equal monthly installments from August 2000 through December 2000;

---

[2] The Debtor reserves all of its defenses, including its right to argue that the First Settlement Agreement did not effect a release of, or limitation of damages for, claims that the Debtor had against the Defendant.

[3] The Debtor reserves all of its defenses, including its right to argue that the First Settlement Agreement did not supersede the Original Agreement.

- The Defendant must give the Debtor the technical support necessary to make the Assel Mill meet the Performance Guarantees;

- "[The Defendant's] liability for faults resulting from the execution of the present Final Settlement Agreement[4] is restricted to the extent that [the Defendant] will undertake to rectify the said faults or re-execute the supervision of erection and commissioning. Damage to the Work will be made good by [the Defendant] by repair or replacement at [the Defendant's] discretion, provided that the equipment involved is part of [the Defendant's] scope of supply. [The Defendant's] liability as defined above is restricted to US $25,000—per single occurrence, but maximum to US $50,000—per all occurrences in aggregate"; and

- "Notwithstanding any other provision of this Final Settlement Agreement, in no event, whether as a result of breach of contract, tort (including negligence), or otherwise, shall [the Defendant] be liable to [the Debtor] for any type of indirect or consequential damages whatsoever suffered by [the Debtor] such as, but not limited to, anticipated profits, loss of contracts, reduction in use of any facilities or the increased expense of operations, or otherwise".

**Continued Failure Of The Assel Mill Necessitates**
**The Assumption Of The First Settlement**
**Agreement**

Since August 17, 2000, the Assel Mill has failed to meet the Performance Guarantees. After the Petition Date, the Debtor continued to need technical support from the Defendant for the Assel Mill. Without the Defendant's continued support, the Debtor's Texas plant would cease operations, and the Debtor's reorganization efforts would have been crippled. Thus, when the Defendant insisted that the Debtor assume the First Settlement Agreement pursuant to § 365 of the Bankruptcy Code, the Debtor was forced to comply.

On January 17, 2001, the Debtor filed a motion with this Court seeking authority to assume the First Settlement Agreement pursuant to § 365 of the Bankruptcy Code (the "Assumption Motion"). A true and accurate copy of the Assumption Motion is attached to the

---

[4] In the document itself, the parties referred to the First Settlement Agreement as the "Final Settlement Agreement." For ease of reference, the August 17, 2000 agreement will be referred to herein as the First Settlement Agreement.

Complaint as **Exhibit C**. By the Assumption Motion, the Debtor sought, among other things, authority to pay the Defendant equal payments of $25,846 from January 2001 through April 2001 and an additional $16,023 for certain spare parts support.

On January 31, 2001, the Court entered an order granting the Assumption Motion and authorizing the Debtor to assume the First Settlement Agreement pursuant to § 365 of the Bankruptcy Code (the "Assumption Order"). **The Court specifically retained jurisdiction over the Debtor, the Defendant and all parties asserting an interest in the First Settlement Agreement in order to implement and effectuate the provisions of the Assumption Order.** A true and accurate copy of the Assumption Order is attached to the Complaint as **Exhibit D**.

### Persistent Failure Of The Assel Mill Leads To Yet Another Settlement Agreement

Following the assumption of the First Settlement Agreement, the Assel Mill still failed to meet the Performance Guarantees. To address the continuing performance problems with the Assel Mill, the Debtor and the Defendant entered into a Minutes of Meeting and Agreement on March 7, 2001, a true and accurate copy of which is attached to the Complaint as **Exhibit E** (the "Second Settlement Agreement").

Pursuant to the Second Settlement Agreement, the Defendant agreed, among other things, to continue providing assistance and support to the Debtor in order to bring the Assel Mill in compliance with the Performance Guarantees. In exchange, the Debtor purported to release, or otherwise limit its damages for, claims it had against the Defendant (the "Second Settlement Transfers").[5] **Like the First Settlement Agreement, the Second Settlement Agreement does**

---

[5] The Debtor reserves all of its defenses, including its right to argue that the Second Settlement Agreement did not effect a release of, or limitation of damages for, claims that the Debtor had against the Defendant.

**not contain an arbitration clause**, nor did the Court authorize the Debtor to enter into the Second Settlement Agreement pursuant to § 363 of the Bankruptcy Code, or otherwise.

### The Defendant's Total Failure To Produce A
### Working Assel Mill Leads To Litigation

As detailed above, the Debtor has now filed the Complaint in this Court, seeking to avoid and recover the fraudulent transfers made by the Debtor to the Defendant in, or pursuant to, the Original Agreement, the First Settlement Agreement, and the Second Settlement Agreement. In addition, the Debtor has filed a breach of contract claim in the Texas Litigation alleging that the Defendant has breached the Original Agreement. The Debtor has not alleged a breach of the First and Second Settlement Agreements in the Texas Litigation and has only raised these Agreements by way of declaratory judgment to blunt any defense the defendants may attempt to raise under these documents.

## ARGUMENT

### I. THE DEBTOR HAS A RIGHT TO PROSECUTE ITS CHAPTER 5 AVOIDANCE ACTIONS AGAINST THE DEFENDANT IN THIS COURT

The Debtor has the authority to prosecute Chapter 5 avoidance actions against the recipients of fraudulent transfers, preferences, and avoidable post-petition transfers. See Bankruptcy Code §§ 547, 548, 549 and 550. In addition, the Debtor has a right to step into the shoes of its creditors in order to avoid and recover fraudulent transfers using applicable non-bankruptcy law. See Bankruptcy Code § 544(b). In this case, the Debtor has properly pled all of these causes of action against the Defendant. The Defendant does not dispute that the Debtor has properly pled its claims, nor does the Defendant challenge the Debtor's authority to bring such actions for the benefit of the Debtor's estate.

## II.    THE COURT SHOULD NEITHER ABSTAIN FROM HEARING, NOR STAY, ANY OF THE COMPLAINT ACTIONS

The Defendant does not ask this Court to refer any of the issues in this adversary proceeding to arbitration. Rather, the Defendant seeks a stay of the TUFTA Claim because the Defendant wrongly presumes that: (1) the TUFTA Claim and the Texas Litigation are referable to arbitration; and (2) the TUFTA Claim and the Texas Litigation present the same cause of action. See generally Defendant's Motion. The Defendant's conclusion is wrong because its premises are wrong: none of the Debtor's claims against the Defendant are referable to arbitration, and the TUFTA Claim does not present the same claim at issue in the Texas Litigation. Consequently, the Court should neither abstain from hearing, nor impose a stay on, any of the issues in this proceeding.

### A.    The Settlement Agreements Do Not Contain Arbitration Clauses

The crux of this adversary proceeding is the avoidability of the First and Second Settlement Agreements, neither of which contain arbitration clauses! It is therefore wrong to suggest that the TUFTA Claim should be stayed because it is dominated by arbitrable issues.[6] To the contrary, the TUFTA Claim is a core bankruptcy action involving matters over which this Court expressly retained jurisdiction. Indeed, none of the Debtor's Chapter 5 avoidance actions against the Debtor are arbitrable.[7] Therefore, this Court is the best forum for this lawsuit.

### B.    Abstention Is Inappropriate

Under the circumstances of this case, abstention is totally inappropriate. The doctrine of abstention is an extraordinary and narrow exception to the duty of a bankruptcy court

---

[6] Even if all of the Agreements at issue contained arbitration clauses—and again, they do not!—the TUFTA Claim triggers no arbitrable issues as a matter of law. See Section II.D., infra.

[7] If and when the issue is properly presented to this Court, the Debtor will show that arbitration is also inappropriate with respect to any breach of contract or related fraud claims brought herein. See Section II.E., infra.

to adjudicate a controversy properly before it. See, e.g. West Coast Video Enterprises, Inc. v. Owens (In re West Coast Video Enterprises), 145 B.R. 484, 488 (Bankr. E.D. Pa. 1992) (quotations and citations omitted). There is only a "narrow sphere" of cases in which discretionary abstention should be granted under § 1334(c)(1). See id. (citation omitted). Indeed, it is the "exception to the rule that federal courts should hear and decide matters properly before them." Id. (citation omitted). Abstention rarely should be invoked. See id. (citation omitted). This is particularly true considering the limits imposed on appeals from decisions to abstain. See 28 U.S.C. § 1334(d).

The Defendant must show that abstention is warranted after due consideration of twelve factors—none of which it discusses: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which the issues of state law predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters; (9) the burden on the Court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the presence in the proceeding of non-debtor parties; and (12) the existence of the right to a jury trial. See, e.g. Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.), 278 B.R. 42, 52 (Bankr. D. Del. 2002) (Walsh, J.) (examining permissive abstention but finding that mandatory abstention was proper under 11 U.S.C. § 1334(c)(2)).

Although the evaluation of these factors is not a mathematical formula, see Trans World Airlines, Inc. v. Karabu Corp., 196 B.R. 711, 715 (Bankr. D. Del. 1996), at least nine of these factors weigh against abstention in this case.

Factor One

The Debtor's causes of action against the Defendant are the sole remaining source of recovery for the Debtor's creditors, and one of the last contentious issues to be addressed in this case. If the Court were to abstain from hearing the TUFTA Claim, it would greatly disrupt the Debtor's efforts to advance this case to a timely conclusion. See, e.g. Gandy v. Gandy (In re Gandy), 299 F.3d 489, 498 (5th Cir. 2002) (denying motion to compel arbitration and for stay pending arbitration in part because "Debtor's claims against the Gandys appear to represent very nearly the entirety of Debtor's bankruptcy estate.").

Factor Four

This is particularly true given that the TUFTA Claim and the Texas Litigation do not present the same cause of action. Despite the Defendant's many attempts to equate the TUFTA Claim with the Texas Litigation, they are not the same claim. The Debtor need not show a breach of contract to prove its TUFTA Claim. Rather, the Debtor must show that particular transfers of the Debtor's property were constructively fraudulent, including not just the Original Agreement, but the First and Second Settlement Agreements, and any monetary transfers made pursuant to those Agreements. It would be absurd to suggest that the Debtor's right to recover all of these fraudulent transfers on behalf of its creditors is fully protected by a pending breach of contract action which addresses only the Original Agreement.

In light of this fact, abstention from hearing the TUFTA Claim would effectively extinguish the Debtor's right to avoid and recover, on behalf of its creditors, fraudulent transfers

made more than one year prior to the bankruptcy filing. Due to the statute of limitations constraints imposed by 11 U.S.C. § 546, the Debtor now lacks the ability to commence the TUFTA Claim in any other forum.

Factors Two, Six and Seven

This entire lawsuit is premised upon federal bankruptcy issues. Almost all counts arise from Chapter 5 of the Bankruptcy Code, including the TUFTA Claim, which the Debtor would not have standing to bring without the powers afforded by § 544(b). A crucial component of this adversary proceeding involves the avoidability of the First and Second Settlement Agreements, the first of which was assumed by operation of Bankruptcy Code § 365, and over which the Court expressly retained jurisdiction in order to implement and effectuate the provisions of the Assumption Order.

Moreover, the TUFTA Claim is a "core" proceeding under 28 U.S.C. § 157(b)(2)(H)—both in form and in substance—and is inextricably intertwined with this bankruptcy case. See, e.g. Gandy, 299 F.3d at 495-500 (finding that § 544, § 548 and § 550 actions ("three causes of action that derive entirely from the federal rights conferred by the Bankruptcy Code") are core proceedings, the resolution of which "implicates matters central to the purposes and policies of the Bankruptcy Code."). A Chapter 11 debtor's right to recover and collect all of its estate assets, wherever they may be found, is central to the reorganization process. Cf. 28 U.S.C. § 1334(e) (this Court has exclusive jurisdiction over property of the Debtor and its estate "wherever located"). Equally important is the expeditious and equitable distribution of assets of the Debtor's estate. See Gandy, 299 F.3d at 498-99 (finding that a § 544, § 548 and § 550 dispute "intimately implicates" this "central purpose of the Bankruptcy Code"); Pardo v. Pacificare (In re APF Co.), 264 B.R. 344, 364 (Bankr. D. Del. 2001) (Walsh, J.)

(finding that enforcement of an arbitration clause in Chapter 5 avoidance actions would disrupt the equality of distribution, "another fundamental bankruptcy policy").

Factor Three

There is no concern of difficult or unsettled state law in this proceeding. The TUFTA is the Texas version of the Uniform Fraudulent Transfer Act—an Act that has been utilized by litigants for many years. There is nothing to suggest that complex issues of state law are involved with the TUFTA Claim.

Factors Eight And Nine

It is not feasible to sever state law issues from the core bankruptcy matters at stake in this proceeding. By recognizing that there is no basis for a stay or abstention on the non-TUFTA claims, the Defendant concedes in its Motion that the non-TUFTA claims should and will be heard in this Court. Therefore, it would be extremely inefficient and would place a significant burden on the Court's docket to abstain or impose a stay on this adversary proceeding when the Chapter 5 avoidance actions will be heard here anyway. Abstention would also increase the need for duplicative discovery and would create the possibility of inconsistent rulings—a result directly at odds with the purpose for discretionary abstention. See 28 U.S.C. § 1334(c)(1) (stating that abstention is appropriate only when it would be "in the interest of justice").[8]

Although the TUFTA Claim involves issues of state law, it too is a core bankruptcy power given to the Debtor only by authority of Bankruptcy Code § 544(b). Were it

---

[8] The Defendant also wrongly suggests that comity with state courts is important. There is no action pending in state court because the Defendant removed the Texas Litigation to the federal court!

not for the Bankruptcy Code, the Debtor would not have standing to bring the TUFTA Claim on behalf of its creditors.

Factor Ten

The Debtor did not file the TUFTA Claim with this Court in an effort to forum shop, nor has the Defendant argued as much. To the contrary, this Court is the proper forum for Chapter 5 causes of action, particularly when this Court entered the Assumption Order and specifically retained jurisdiction over the Debtor, the Defendant, and all parties asserting an interest in the First Settlement Agreement in order to implement and effectuate the provisions of that Order.

Factors Eleven And Twelve

The only non-debtor party in this proceeding is the Defendant, which has already answered the Debtor's Complaint and submitted itself to the jurisdiction of the Bankruptcy Court. Finally, there is no jury trial right implicated here, nor has the Defendant requested a jury trial.

Based upon thorough consideration of the foregoing factors, the only possible conclusion is that abstention is inappropriate. Indeed, the Defendant raises only perfunctory arguments as to why abstention serves the interests of justice. Much to the contrary, the interests of justice can only be served by allowing the Debtor to proceed with its TUFTA Claim in this Court and to recover against the Defendant which repeatedly failed to fulfill its promises (some of them made before this Court), leaving the Debtor abandoned and with no prospects for reorganization of its Texas division.

## C. A Discretionary Stay Is Inappropriate

If the purpose of a discretionary stay is to control the docket and conserve judicial resources, see Defendant's Motion at 5, it is difficult to understand how a discretionary stay will

further that purpose under the circumstances of this case. It would be a waste of resources to allow litigation to proceed on several Chapter 5 avoidance actions, including a fraudulent transfer claim under § 548, only to stay a very similar avoidance claim under the TUFTA.[9] See, e.g. APF Co., 264 B.R. at 364 ("The efficient resolution of claims and the conservation of the bankruptcy estate assets is an integral purpose of bankruptcy and inures to the benefit of the Debtors' creditors.").

It would be similarly inefficient to divide this litigation when both the TUFTA Claim and the non-TUFTA claims address issues over which this Court expressly retained jurisdiction. See, e.g. Insurance Company of North America v. NGC Settlement Trust & Asbestos Claims Management Corp. (In re National Gypsum Co.), 118 F.3d 1056, 1069 (5th Cir. 1997) (upholding denial of motion to stay pending arbitration because "a bankruptcy court retains significant discretion to assess whether arbitration would be consistent with the purpose of the Code, including the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.") (emphasis added).

Finally, as mentioned above, the First and Second Settlement Agreements (the effect and avoidability of which is of great importance to this adversary proceeding) do not contain arbitration clauses. This Court has previously declined to fragment litigation when the fragmentation is based on an arbitration clause not common to all contracts, and should do so here. See APF Co., 264 B.R. at 363-64 ("Arbitrarily staying the adversary proceeding to resolve

---

[9] The § 548 action will involve proof of nearly identical facts to the TUFTA Claim, including solvency and valuation issues.

only those claims which are based on contracts that happen to contain arbitration clauses will result in piecemeal litigation and unnecessary expense for both parties.").

### D.    The Federal Arbitration Act Does Not Mandate A Stay

The Defendant wrongly argues that "a stay of these proceedings is required under the Federal Arbitration Act" because, according to the Defendant, the breach of contract claim in the Texas Litigation "will be dispositive of certain issues in Debtor's claims under TUFTA." See Defendant's Motion at 6.  This is wrong.

By its own language, the Federal Arbitration Act requires a mandatory stay only when: (1) the movant is seeking to refer the issues before the court to arbitration; and (2) the issues before the court are in fact referable to arbitration.  See 9 U.S.C. § 3 ("If any suit or proceeding be brought . . . upon any issue referable to arbitration . . . the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . shall stay the trial of the action . . . .") (emphasis added).  In this instance, neither of these requirements is present.

The Defendant is not seeking to refer the issues before this Court to arbitration. Rather, the Defendant hopes to stay this proceeding because, in its view, another lawsuit filed in a different forum is arbitrable.  Consequently, this Court is not the court in which the allegedly arbitrable suit is pending, and the mandatory stay provisions of the Federal Arbitration Act cannot apply.  The Defendant's argument is better presented to the Texas court, where it has already made this argument.

Even if the Defendant wanted to refer the TUFTA Claim to arbitration, it could not.  First, as discussed above, the First and Second Settlement Agreements do not contain arbitration clauses, so there is no basis to arbitrate with respect to those Agreements.  Second, with respect to the Original Agreement, § 544(b) claims such as the TUFTA Claim are not

subject to arbitration.[10] See Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1155 (3rd Cir. 1989) (holding that § 544(b) claims are not subject to arbitration). They are creditor claims that the Bankruptcy Code authorizes the Debtor to assert on the creditors' behalf, and because the Debtor's creditors were not parties to the Original Agreement, they cannot be bound by the arbitration clause therein. See id.; In re APF Co., 264 B.R. at 363 (holding that § 544(b) claims are not subject to arbitration). See also Allegaert v. Perot, 548 F.2d 432 (2d Cir.), cert. denied 432 U.S. 910 (1977) (same). Because the TUFTA Claim is not arbitrable, mandatory abstention cannot apply.

### E. The Debtor Should Be Granted Leave To Amend The Complaint

All of the issues raised by the Defendant can be best addressed by allowing the Debtor to amend the Complaint to include causes of action for breach of contract and related claims, which the Debtor is currently planning to do.[11] If the Defendant still wishes to arbitrate this dispute, at that time the Debtor will show the Court that arbitration is inappropriate due to, among other things, the Court's historical involvement in this dispute, its retention of jurisdiction over these matters, and the inherent conflict between arbitration and this lawsuit.

### CONCLUSION

For the reasons set forth above, abstention, or a stay pending arbitration, are completely inappropriate remedies under the circumstances of this case. Instead, the Court can and should resolve these matters by allowing the Debtor to file a motion for leave to amend the

---

[10] The Defendant has no argument as to why the non-TUFTA claims would be subject to a mandatory stay. Instead, the Defendant attempts to bootstrap the purportedly arbitrable nature of the Texas Litigation to this adversary proceeding by wrongly equating the TUFTA Claim with the Texas Litigation. See Motion at 6 ("The issues of whether SMS breached the Agreement and whether the value of the mill as promised and the value of the mill as delivered are roughly equivalent must be arbitrated . . . .").

[11] As the Defendant acknowledges, the Debtor commenced this adversary proceeding prior to the Texas Litigation.

Complaint to include causes of action for breach of contract and related claims. The Debtor respectfully requests that the Court deny the Motion in its entirety.

Dated: February 19, 2003

_____

Neil B. Glassman (No. 2087)
Steven M. Yoder (No. 3885)
Ashley B. Stitzer (No. 3891)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 655-5000

   -and-

Salvatore A. Barbatano
David B. Goroff
Frank W. DiCastri
FOLEY & LARDNER
321 North Clark Street
Suite 1500
Chicago, Illinois 60610
(312) 832-4500

   -and-

Donald A. Workman
FOLEY & LARDNER
Washington Harbour
3000 K Street N.W.
Suite 500
Washington, DC 20007-5101
(202) 672-5300

Attorneys for the Debtors and
Debtors-in-Possession