IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>VISION METALS, INC., et al.,<br><br>        Debtors. | Chapter 11<br><br>Case No. 00-4205 (MFW)<br><br>Jointly Administered |
| VISION METALS, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>SMS DEMAG, INC.,<br><br>        Defendant. | Adv. Pro. No. 02-6528 |

**REPLY BRIEF OF SMS DEMAG, INC. IN SUPPORT OF ITS MOTION FOR ABSTENTION OR IN THE ALTERNATIVE FOR A STAY OF PROCEEDINGS**

Defendant SMS Demag, Inc. ("SMS"), by and through its counsel, files this brief in reply to the Brief of Vision Metals, Inc. ("Debtor") in Opposition to Defendant's Motion for Abstention or in the Alternative for a Stay of Proceedings ("Brief").

**I. BACKGROUND**

As more fully discussed in SMS's Motion for Abstention or in the Alternative for a Stay of Proceedings ("Motion"), this Court should exercise its discretion to abstain from hearing Debtor's claims under the Texas Uniform Fraudulent Transfer Act ("TUFTA") because the Debtor has improperly attempted to litigate the same issues in two different forums, thereby subjecting SMS to a substantial risk of inconsistent and/or duplicative rulings. In the alternative, this Court should stay these proceedings as they relate to Debtor's claims under TUFTA because they are duplicative of Debtor's claim for breach of the Agreement for Supply of Equipment for

an Assel and Stretch Reducing Mill ("Agreement") that is currently pending before the United States District Court for the Southern District of Texas, Houston Division ("Texas Action" in the "Texas Court"). Further, this action must be stayed because all issues related to the Agreement must be referred to arbitration under Section 3 of the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA").

While devoting much of its Brief to a discussion of the appropriateness of abstention under these circumstances, Debtor concludes by advising this Court that it will request permission to file an Amended Complaint "to include causes of action for breach of contract and related claims." Brief at 16[1]. While granting Debtor's request to essentially transfer the claims against SMS in the Texas Action to this Court may obviate the need for abstention[2], this Court must nonetheless stay the TUFTA claims pending resolution of the underlying breach of contract action, irrespective of whether that breach of contract action is arbitrated or litigated in Texas or before this Court.

### A. **DEBTOR'S ALLEGATIONS IN THE BANKRUPTCY COMPLAINT**

As summarized below, the Bankruptcy Complaint attempts to state six causes of action against SMS.

---

[1] SMS will refrain from commenting upon the proprietary of any amendment to the Complaint until Debtor prepares and serves SMS with a Motion for Leave to Amend. SMS will respond to the Motion for Leave to Amend if and when one is filed.

[2] In doing an about face and suggesting that it should, upon proper motion, be granted leave to amend the Complaint to assert "causes of action for breach of contract and related claims," Brief at 16, Debtor has implicitly recognized that it is inappropriate to litigate the same issues in this Court and in the Texas Action. Rather than having this Court abstain from hearing the TUFTA claims during the pendency of the Texas Action, however, Debtor now apparently prefers to consolidate the claims before this Court. Debtor's Brief provides no insight as to why it commenced the breach of contract and declaratory judgment action in Texas State Court, only to now change its mind. The obvious answer is that breach of contract issues predominate and are determinative of the material issues in this proceeding.

| Count | Claim | Complaint | Relief Sought |
|---|---|---|---|
| I | § 547(b) Preferential Transfers | ¶ 31 | $26,718 |
| II | § 549(a) Post-Petition Transfers | ¶ 37 | $151,177 |
| III | § 548 Fraudulent Transfers | ¶ 41 | $26,718[3] |
| IV | TUFTA Transfers | ¶ 55 | $15,645,651[4] |
| V | Vacate Assumption Order | ¶ 68 | Vacation |
| VI | Declaratory Judgement | ¶ 72 | Equitable Estoppel |

As this summary makes clear, Debtor's attempt to recoup the $15,467,755 paid by the Debtor to SMS as the adjusted purchase price of the Assel Mill dwarfs all other claims. The crux of Debtor's allegation against SMS is that the Assel Mill failed to meet the Performance Guarantees set forth in the Agreement. See, e.g., Brief at 3 ("The Assel Mill failed to meet Performance Guarantees prior to the Petition Date"); Brief at 5 ("The Assel Mill has failed to meet the Performance Guarantees"); Brief at 6 ("Following the assumption of the First Settlement Agreement, the Assel Mill still failed to meet the Performance Guarantees.") That allegation is a garden variety, breach of contract claim. Nevertheless, in an attempt to invoke the jurisdiction of the bankruptcy court, Debtor has pled all purchase price payments as "State Fraudulent Transfers" under § 544(b). See Complaint ¶ 55. A state law claim under §544(b) was Debtor's only bankruptcy court recourse since each of the purchase price payments occurred more than one year prior to the Petition Date. Id. at ¶11, ¶55. In stark contrast to the $15,467,755 of alleged "State Fraudulent Transfers," the total avoidance sought on the Bankruptcy Code Preferential Transfers, Post-Petition Transfers, and Fraudulent Transfers is a grand total of $177,895.

---

[3] Duplicative of relief sought in Count I.

[4] Includes $177,895 sought in Counts I, II and III, and $15,467,755 in Assel Mill purchase price payments ("State Fraudulent Transfers").

Likewise, Counts V and VI are directed solely toward nullification of the Final Settlement Agreement that was assumed by the Debtor.[5] In the Final Settlement Agreement, the "Parties declare that with the exception of the claims and/or obligations listed under the present Claim Settlement Agreement no further claims and/or obligations shall exist between [Debtor] and [SMS]." Complaint at Ex. B, ¶ 13. In moving this Court to assume the Final Settlement Agreement and Certificate of Final Acceptance, Complaint at Ex. B, Debtor represented that "[i]t is the Debtors' business judgment that assumption of the Agreement is in the best interests of their estates and creditors." Complaint at Ex. C, ¶ 10. In other words, it was in the best interest of the Debtor and its creditors to acknowledge final acceptance of the Project and to confirm that Debtor had released SMS from any obligations not set forth in the Final Settlement Agreement. This Court granted the assumption request, expressly finding that "assumption of the Agreement by the Debtors is in the best interests of the Debtors, their estates and their creditors." Complaint at Ex. D, ¶ 3. In the unlikely event that this Court were to vacate the assumption (Count V) or equitably estop SMS from asserting the Final Settlement Agreement as a defense to the claims of Debtor (Count VI), Debtor would still have to prove that SMS breached the performance guarantees set forth in the Agreement and otherwise delivered a mill that was not reasonably equivalent to the $15,467,755 purchase price that Vision allegedly paid to SMS.

Therefore, it is abundantly clear that the dominant issue in this case is Debtor's attempt to recoup all or a substantial portion of purchase price paid to SMS for the Assel Mill because the Assel Mill allegedly failed to meet the Performance Guarantees in the Agreement.

---

[5] As set forth more fully in its Answer, see, e.g., ¶17-19, 23-26, SMS does not agree that there are "two settlement agreements" nor that the Certificate of Final Acceptance Certificate is part of what Debtor refers to as the "First Settlement Agreement." The Certificate of Final Acceptance acknowledges final acceptance of the Project by Debtor and has specific legal consequences under the Agreement. There is no dispute that Debtor has assumed both the Final Settlement Agreement and the Certificate of Final Acceptance. See Complaint at Ex. D; Answer at ¶24. Consequently, SMS shall use the term "Final Settlement Agreement" to describe the Settlement Agreement – but not the Certificate of Final Acceptance – that is included within Ex. B to the Complaint.

To contort this breach of contract allegation into a bankruptcy matter, Debtor alleges that certain "State Fraudulent Transfers" were paid to SMS without receiving "reasonably equivalent value in exchange." The unstated causal connection is that Debtor allegedly did not receive "reasonably equivalent value in exchange" for the purchase price because the Assel Mill that it purchased allegedly failed to meet the Performance Guarantees required of it by the Agreement. Thus, it is clear that Debtor has dressed up a breach of contract claim in TUFTA clothing in order to invoke the jurisdiction of this Court and attempt to avoid mandatory arbitration under the Agreement.

### B. THE TEXAS ACTION

The issues presented in the Texas Action will be dispositive of the Debtor's TUFTA claims. As Debtor states in its Brief, "[SMS's] Total Failure to Provide a Working Assel Leads to [This] Litigation." Brief at 7. The crux of the allegations in both cases is that the Assel Mill failed to meet the Performance Guarantees set forth in the Agreement. See, e.g., Brief at 3, 5 6. This is the precise issue raised in the Texas Action. See Texas Complaint at ¶ 14 ("Defendants breached ... [the Agreement] because the plant has not and cannot fulfill the performance guarantees set forth therein"). While in this case Debtor seeks to "avoid" $15,467,755 in payments to SMS as a "fraudulent transfer" made by the Debtor without receiving reasonably equivalent value in exchange, Debtor seeks return of the same payments in the Texas Action on a breach of contract theory. Alternatively, Debtor's prayer for relief in the Texas Action is for "actual direct damages constituting the difference between the value of the plant/mill as delivered and as promised." Texas Complaint at p. 6, ¶ 1(a). The relief sought in each case under each legal theory is identical – the recoupment of the purchase price or alternatively the amount paid in excess of the reasonable value of the mill as delivered.

Likewise, Count II of the Texas Action and Count VI of the Bankruptcy Action are virtually identical. In Count II of the Texas Action, Debtor seeks a declaration "that, under Texas law, the purported Settlement Agreements do not provide a defense to this action for

breach of the [Agreement]." Texas Complaint at ¶20. In Count VI of the Bankruptcy Action, Debtor seeks a declaration of the Final Settlement Agreement does not "bar any of the relief sought herein." In each case, Debtor seeks this declaration "to blunt any defense that defendants may attempt to raise under these documents." Brief at 7.

## II. THIS COURT SHOULD ABSTAIN FROM HEARING DEBTOR'S CLAIMS UNDER THE TUFTA

For the reasons set forth in the Motion, this Court should abstain from hearing Debtor's claims under the TUFTA. In the event that Debtor files a Motion for Leave to Amend, and this Court grants that Motion after providing SMS with the opportunity to respond, the transfer of the claims against SMS in the Texas Action to this Court may obviate the need for this Court to abstain from hearing Debtor's TUFTA claims. Accordingly, SMS respectfully requests that its Motion for Abstention be held in abeyance pending disposition of any Motion for Leave to Amend that may be filed by Debtor.

SMS's Motion to Stay is unaffected by any Motion for Leave to Amend that may be filed by Debtor. Under applicable law, this Court must stay the TUFTA claims pending resolution of the breach of contract claim that is currently the subject of the Texas Action, regardless of the forum in which the breach of contract claim is pending.

## III. THIS COURT MUST STAY THESE PROCEEDINGS PENDING RESOLUTION OF DEBTOR'S CLAIM FOR BREACH OF CONTRACT

As set forth in the Motion, the Agreement contains the following agreement to arbitrate:

> XIX. ARBITRATION
>
> In the event that any dispute shall arise between [Debtor] and [SMS] regarding the terms, interpretation, or application of any provision of this Agreement or with respect to the supplies and services rendered thereunder or any other matter relating to this Agreement, either party under express exclusion of any ordinary court of law shall submit the dispute to an arbitration panel of three

>   (3) arbitrators mutual acceptability to both parties and established in accordance with the disputes resolution procedures of the American Arbitration Association.
>
>   The decision of the arbitrators shall be final and binding upon the parties with respect to facts and laws, and may be enforced by either party in any court of competent jurisdiction.

As a result, SMS moved to dismiss the Texas Action or, in the alternative, to stay the Texas Action pending arbitration of all claims before the Texas Court. See Motion at Ex. 2. That motion is pending in the Texas Court.

Contrary to the assertions of the Debtor, there are issues before this Court that the parties have agreed to arbitrate in Section XIX of the Agreement.[6] Section 3 of the FAA provides that this Court "<u>shall</u> ... stay the trial of the action until such arbitration has been held in accordance with the terms of the agreement" if the trial involves "any <u>issue</u> referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3 (emphasis added). The touchstone is <u>any</u> <u>issue</u> referable to arbitration. As this Court has noted:

> It is well established that arbitration is a favored mechanism for resolving disputes, especially where the parties previously agreed to utilize arbitration. It is stressed that, if <u>an</u> <u>issue</u> is arbitrable under the agreement, the Arbitration Act leaves a court <u>without</u> <u>discretion</u> and <u>requires</u> that the trial be stayed until arbitration is completed.

<u>Teu Holdings, Inc. v. Kemeny</u>, 287 B.R. 26, 36 (D. Del. 2002) (quotation and citations omitted) (emphasis added)[7].

---

[6] Debtor incorrectly suggests that "Defendant is not seeking to refer issues before this Court to arbitration. Rather, Defendant hopes to stay this proceeding because, in its view, another lawsuit filed in another forum is arbitrable." Brief at 15. All issues before the Texas Court are clearly arbitrable. However, many issues presented in the TUFTA claim before this Court are arbitrable as well. See Motion at ¶24. The FAA focuses on whether <u>issues</u> before the Court are subject to arbitration.

[7] Debtor misconstrues the requirements of the FAA. The FAA does not require that the "cause of action" be referable to arbitration. <u>Cf</u>. Brief at 8. Rather, as the Debtor recognizes later on its brief, the FAA "requires a mandatory stay" if "the issues before the court are in fact referable to arbitration". Brief at 15. The focus of Section 3 of the FAA is "issues referable to arbitration" not "causes of action" referable to arbitration.

Debtor chose to advance its claims against SMS in two forums. The breach of contract claim currently pending before the Texas Court is clearly arbitrable. Pursuant to Section XIX of the Agreement, all issues relating to the Agreement or its breach must be referred to arbitration. As a result, many of the issues before this Court with respect to the TUFTA claim are referable to arbitration, and therefore the TUFTA claims must be stayed.

In addition to other elements that must be proven by Debtor in this action, Debtor must establish that it did not receive reasonably equivalent value for the $15,467,755 paid to SMS for the Assel Mill. The question of the value of the "supplies and services rendered" under the Agreement is arbitrable. The issue as to whether the "supplies and services rendered" met the Performance Guarantees of the Agreement is arbitrable. Any issues as to whether and when Final Acceptance occurred under the Agreement are arbitrable. Any dispute between Debtor and SMS "with respect to … any other matter relating to this Agreement" is arbitrable. Consequently, under the FAA, all proceedings with respect to the TUFTA claims must be stayed pending the arbitration of all arbitrable issues.

Seeking to avoid this unmistakable result, Debtor argues that the "crux of this adversary proceeding is the avoidability of the First and Second Settlement Agreements, neither of which contain arbitration clauses!" Brief at 8. This argument is circular. If the Final Settlement Agreement were to be avoided, then presumably SMS could not assert release/accord and satisfaction/limitation of liability-type defenses in response to allegations that the Assel Mill failed to meet the Performance Guarantees of the Agreement. Consequently, Debtor would be required to demonstrate that SMS breached the Agreement by failing to provide a mill that met the Performance Guarantees. Under all circumstances, that underlying issue is arbitrable.

Further, all matters in dispute regarding the Certificate of Final Acceptance, Final Settlement Agreement and Minutes of Meeting and Agreement are themselves disputes between Debtor and SMS "with respect to the supplies or services rendered [under this Agreement] or any

other matter relating to this Agreement." Agreement at Art. XIX. Consequently, even if one ignores the Certificate of Final Acceptance and posits that "the crux of this adversity proceeding is the avoidability of the First and Second Settlement Agreements," Brief at 8, the underlying issues are arbitrable. Therefore, this action must be stayed pending the arbitration of all arbitrable claims.

Even if this Court denies the Motion to Stay pursuant to Section 3 of the FAA, this Court still has the authority to stay these proceedings to avoid duplicative litigation. <u>See</u> Motion at 5-6, ¶20 (collecting authorities). The Court should exercise that authority and stay the TUFTA proceedings pending resolution of the underlying breach of contract claim because the Debtor's TUFTA claims are duplicative of its claim for breach of the Agreement in the Texas Action. Not only are all contractual issues arbitrable, but the contractual issues raised in the Texas Action are determinative of issues raised in the TUFTA claim. Debtor seeks the return of all or a substantial portion of the purchase price for the Assel Mill in both cases. In order to recover in either action, Debtor must prove, <u>inter alia</u>, that SMS breached the Agreement of failing to deliver the mill as promised, and Debtor must establish the difference between the value of the mill as delivered and as promised. Further, any recovery by Debtor pursuant to the TUFTA claim would be duplicative of any damages awarded to Debtor in the Texas Action. For these reasons, in the event that the Court denies the Motion for Stay pursuant to Section 3 of the FAA, the Court should nevertheless exercise its power to stay proceedings for judicial efficiency and to avoid duplicative and unnecessary litigation. <u>See</u> Motion at 5-6, ¶ 20 (collecting authorities).

## IV. CONCLUSION

For the reasons set forth herein, as well as those set forth in the Motion, SMS respectfully requests that its Motion for Arbitration be held in abeyance pending disposition of any Motion for Leave to Amend that may be filed by Debtor. Further, SMS respectfully requests that this Court enter an Order staying the proceedings on the TUFTA claims pending resolution of the issues raised in the Texas Action.

Respectfully Submitted,

REED SMITH LLP

By:    */s/ Richard A. Keuler, Jr.*
Richard A. Keuler, Jr. (No. 4108)
1201 Market Street, Suite 1500
Wilmington, DE 19801
Phone: (302) 778-7500
Fax: (302) 778-7575

J. Frank McKenna
PA I.D. No. 17361
Albert Bates, Jr. IV
PA I.D. No. 49908
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131

Attorneys for Defendant

Dated: February 26, 2003