IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| VISION METALS, INC., et al., | ) | Case No. 00-4205 (MFW) |
| Debtors. | ) | Jointly Administered |
| VISION METALS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Proc. No. 02-6528 |
| SMS DEMAG, INC., | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF SMS DEMAG, INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS
AS TO COUNTS V AND VI OF THE COMPLAINT**

## I. INTRODUCTION

On November 11, 2002, Plaintiff Vision Metals, Inc. ("Vision") commenced this adversary proceeding against Defendant SMS Demag, Inc. ("SMS") for avoidance and recovery of various transfers and for relief from the Court's Assumption Order dated January 31, 2001 ("Assumption Order"). The pleadings demonstrate that Vision has failed to state a claim upon which relief may be granted for vacating the Assumption Order and for declaratory relief construing the Assumption Order. Accordingly, SMS is entitled to judgment in its favor as to those claims.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On or about December 10, 1997, Vision and SMS entered into an Agreement for Supply of Equipment for an Assel and Stretch Reducing Mill Project (the "Supply Agreement"). See Exhibit A to the Complaint. Pursuant to the Agreement, SMS was to supply certain equipment for an Assel Mill and Stretch Reducing Mill (the "Project" or the "Mill"). Id.

On or about August 17, 2000, Vision and SMS executed a Certificate of Final Acceptance for the Project, agreeing that Final Acceptance as defined in the Supply Agreement had been achieved. See Exhibit B to the Complaint. Pursuant to the Supply Agreement, Final Acceptance means the date that SMS demonstrated by way of performance testing that all "Work ... has been completed and has met the performance guarantees ..." See Exhibit A to the Complaint at ¶ I, p.2. Thus, as of August 17, 2000, Vision agreed that the Mill met any "Performance Guarantees."

Also on or about August 17, 2000, Vision and SMS also entered into a settlement agreement concerning the Supply Agreement ("Final Settlement Agreement"). See Exhibit B to the Complaint.[1] Under the Final Settlement Agreement, SMS agreed to provide certain assistance to Vision free of charge and to forego the final $864,300.00 payment due from Vision. Id. The assistance, which consisted of a maximum total number of four (4) man months at the mill, was to terminate by August 31, 2001. Id. at ¶ 2. SMS agreed to provide additional assistance on a cost plus basis. Id. The Final

---

[1] As set forth more fully in its Answer (¶¶ 17-19, 23-26), SMS does not agree that there are "two settlement agreements" nor that the Certificate of Final Acceptance is part of what Vision refers to as the "First Settlement Agreement." The Certificate of Final Acceptance demonstrates final acceptance of the Project by Vision and has specific legal consequences under the Supply Agreement. The term "Final Settlement Agreement" as used herein refers to the settlement agreement but not the Certificate of Final Acceptance.

Settlement Agreement also contained provisions concerning the supply of spare parts for the Mill. Id. at ¶¶ 5-6.

Pursuant to the Final Settlement Agreement, SMS's liability for any faults in performing the Final Settlement Agreement is limited to repair or replacement and cannot exceed $50,000 in the aggregate. Id. at ¶ 10. Furthermore, SMS is not liable for any incidental or consequential damages. Paragraph 11 of the Final Settlement Agreement provides: "Notwithstanding any other provisions of [the Final Settlement Agreement], in no event, whether as a result of breach of contract, tort (including negligence), or otherwise, shall [SMS] be liable to [Vision] for any type of indirect or consequential damages whatsoever suffered by [Vision] such as, but not limited to, anticipated profits, loss of contracts, reduction in use of any facilities or the increased expense of operations, or otherwise." Id. at ¶ 11.

The Final Settlement Agreement also contains a release of claims and obligations between the parties. Specifically, Vision and SMS agreed that "with the exception of the claims and/or obligations listed under the present Final Settlement Agreement no further claims and/or obligations shall exist between [Vision] and [SMS]." See Exhibit B to the Complaint at p. 3/3, ¶ 13.[2] Although Vision and SMS had agreed by separate signed instrument that all of the "Performance Guarantees" had been met, the release contained in the Final Settlement Agreement is very broad, and necessarily includes any "Performance Guarantees" referenced in Vision's Complaint. Consequently, the Final Settlement Agreement does not mention any failure to meet the

---

[2] Vision and SMS subsequently entered into a Minutes of Meeting and Agreement on or about March 7, 2001 ("Minutes Agreement"). See Exhibit E to the Complaint; Answer at ¶ 26. The Minutes Agreement did not affect the release of claims contained in the Final Settlement Agreement. Id.

"Performance Guarantees" or any a continuing obligation by SMS to see that any "Performance Guarantees" were met.

On November 13, 2000, Vision and its affiliated debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On January 17, 2001, Vision filed a motion with the Court seeking authority to assume the Certificate of Final Completion and the Final Settlement Agreement pursuant to § 365 of the Bankruptcy Code (the "Assumption Motion"). See Exhibit C to the Complaint. In the Assumption Motion, Plaintiff states that "[i]t is the Debtors' business judgment that assumption of the [Certificate of Final Acceptance and Final Settlement Agreement] is in the best interests of their estates and creditors." See Assumption Motion at ¶ 10 (Exhibit C to the Complaint). Vision does not claim in the Assumption Motion that SMS failed to meet any "Performance Guarantees" or that SMS had a continuing obligation to see that any "Performance Guarantees" were met. Instead, Vision asserts that assumption of the Certificate of Final Completion and the Final Settlement Agreement will permit Vision to obtain parts and support necessary to prevent the shutdown of the Mill. Id. at ¶ 10.

On January 31, 2001, the Court granted the Assumption Motion and the Certificate of Final Completion and the Final Settlement Agreement were deemed to be assumed contracts. See Exhibit D to the Complaint. In the Assumption Order, the Court specifically found that "assumption of the [Certificate of Final Completion and Final Settlement Agreement] by the Debtors is in the best interests of the Debtors, their estates and their creditors." See Exhibit D to Complaint.

In Count V of the Complaint, Vision claims that "SMS has never been able to achieve the Performance Guarantees that would permit the Assel Mill to work properly." See Complaint at ¶ 61. Vision further alleges that "circumstances have changed" and that the "Assel Mill simply does not work." Id. at ¶ 63. Vision also alleges

4

that the assumption of the Certificate of Final Acceptance and the Final Settlement Agreement "has ultimately failed to meet the best interests of the Debtors' creditors." Id. at ¶ 65. Based on these allegations, Vision requests that the Court vacate or otherwise set aside the Assumption Order.

In Count VI of the Complaint, Vision seeks a declaratory judgment construing the Assumption Order. Vision alleges that "SMS falsely represented that the Assel Mill would meet the Performance Guarantees." Id. at ¶ 72. As a result, Vision claims that "SMS should be equitably estopped from arguing that the Assumption Order bars any of the relief requested herein." Id.

On January 17, 2003, SMS filed its Answer and Affirmative Defenses averring, inter alia, that Vision is not entitled to any of the relief set forth in Counts V and VI of the Complaint.[3] As set forth below, the pleadings demonstrate that SMS is entitled to judgment as a matter of law on Counts V and VI of the Complaint.

### III. STANDARD FOR JUDGMENT ON THE PLEADINGS

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, after the pleadings are closed, a party may move for judgment on the pleadings if no material facts remain at issue and the parties' dispute can be resolved on both the pleadings and those facts of which the court can take judicial notice. A motion under Rule 12(c) is generally treated in the same manner as a Rule 12(b)(6) motion to dismiss. See Regalbuto v. City

---

[3] The assumption of the Final Settlement Agreement, after due notice to all creditors, bars all claims asserted by Vision in this case. In the Final Settlement Agreement, Vision and SMS agree that "no further claims and/or obligations shall exist between [Vision] and [SMS]." Id. at 3. However, this Motion for Judgment on the Pleadings is directed solely toward Counts V and VI of the Complaint. The most efficient manner in which to address this Adversary Proceeding is to resolve the threshold issue presented in Counts V and VI before engaging in any discovery as to Counts I – IV of the Complaint, or any determination as to the extent to which Count IV is subject to mandatory arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 et. seq.

5

of Philadelphia, 937 F.Supp. 374, 376-77 (E.D.Pa. 1993). "Although the court must construe the complaint in a light most favorable to the plaintiff, it need not accept as true legal conclusions or unwarranted factual inferences." See, e.g., Sullivan Associates, Inc. v. Dellots, Inc., 1997 WL 778976 (E.D. Pa.)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## IV. ARGUMENT

### A. THE PLEADINGS DEMONSTRATE THAT VISION IS NOT ENTITLED TO RELIEF UNDER EITHER RULE 60(b) OR § 105(a).

In Count V of the Complaint, Vision claims that under Rule 60(b) of the Federal Rules of Civil Procedure, "the Court may relieve the Debtor from the Assumption Order because it is no longer equitable that the Order shall have prospective application, or for any other reason justifying relief from the operation of the Assumption Order." See Complaint at ¶ 66. Vision also claims that under § 105(a) of the Bankruptcy Code, the Court has "equitable powers to fashion on order vacating the Assumption Order." Id. at 67. The pleadings demonstrate that Vision has failed to state a claim for relief under either Rule 60(b) or § 105(a). As a result, SMS is entitled to judgment in its favor as a matter of law on all claims set forth in Count V.

#### 1. Vision Is Not Entitled To Relief Under Rule 60(b).

Pursuant to Rule 9024, relief from a judgment or order in a bankruptcy case is governed by Rule 60 of the Federal Rules of Civil Procedure. Rule 60(b) provides for relief from judgments, orders and proceedings on grounds of (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation or other misconduct; (4) the judgment being void; (5) satisfaction, release or discharge of a judgment, or reversal or vacation of a prior judgment on which it

is based, or inequity of the judgment having prospective application; and (6) any other reason justifying relief. See F.R.Civ.P. 60(b).

Relief under Rule 60(b) is an extraordinary remedy and should only be granted in exceptional circumstances. See, e.g., In re Zimmerman, 869 F.2d 1126 (8th Cir. 1989). Rule 60(b) does not provide a basis for a court to permit a party to revisit its earlier decision. Rather, the interest of finality dictates that a party may not be relieved from its deliberate choices. As the Supreme Court and Third Circuit have instructed, in applying Rule 60(b), "[t]here must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." Ackerman v. U.S., 340 U.S. 193, 198 (1950); see Martinez-McBean v. Virgin Islands, 562 F.2d 908, 913 (3d Cir. 1977) (same); see also McCormick v. Chicago, 230 F.3d 319, 327 (7th Cir. 2000)(when a party makes a deliberate, strategic choice to settle, the party cannot be relieved of such a choice merely because her assessment of the consequences was incorrect).

It is well established that mere dissatisfaction in hindsight with choices deliberately made is not grounds to justify relief under Rule 60(b). See, e.g., Nemaizer v. Baker, 793 F.2d 58, 62-63 (2d Cir. 1986). "[A] party who takes deliberate action with negative consequences, or who makes an informed choice as to a particular course of action will not be relieved of the consequences when it subsequently develops that the choice was unfortunate." Parker v. Michigan Nat'l Bank (In re Parker), 90 B.R. 857, 861 (Bankr. W.D.Mich. 1988)(quoting J. Moore & J. Lucas, 7 MOORE'S FEDERAL PRACTICE ¶ 60.22[2] (2d ed. 1987)).

In addition, a "party who simply misunderstands or fails to predict the legal consequences of his deliberate acts cannot later, once the lesson is learned, turn back the clock to undo those mistakes." Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th

Cir. 1999). In short, a "hindsight assessment" of a party's bargain is "not a permissible ground for Rule 60(b)" relief. Andrulonis v. U.S., 26 F.3d 1224, 1235 (2d Cir. 1994).

Here, the pleadings demonstrate that Vision has not established the exceptional circumstances necessary for relief under Rule 60(b). First, by execution of the Certificate of Final Acceptance, Vision agreed that all of the work under the Supply Agreement had been completed and that the Mill met any "Performance Guarantees."

Second, under the Final Settlement Agreement, Vision agreed that "with the exception of the claims and/or obligations listed under the present Final Settlement Agreement no further claims and/or obligations shall exist between the [Vision] and [SMS]." See Exhibit B to the Complaint at p. 3/3, ¶ 13. Although Vision and SMS had agreed by separate signed instrument that all of the "Performance Guarantees" had been met, this release necessarily includes any "Performance Guarantees" referenced in Vision's Complaint. Consequently, the Final Settlement Agreement does not mention any failure to meet any "Performance Guarantees" or any continuing obligation by SMS to see that any "Performance Guarantees" were met.

Third, in the Assumption Motion, Vision does not claim that SMS failed to meet any "Performance Guarantees" or that SMS had a continuing obligation to see that any "Performance Guarantees" were met. Instead, Vision asserts that assumption of the Final Settlement Agreement will permit Vision to obtain parts and support necessary to prevent the shutdown of the Mill. See Assumption Motion (Exhibit C to the Complaint) at ¶ 10. If it was material that SMS had a continuing obligation to see that any "Performance Guarantees" were met, Vision would have so stated in the Assumption Motion. Rather, in the Assumption Motion, Vision asked this Court for permission to assume the Certificate of Final Acceptance, an instrument that be definition means that

the "Work . . . has been completed and has met the performance guarantees." See Ex. A to the Complaint at ¶ I, p. 2. Rule 60 cannot be used to raise arguments that could and should have been made before the order was entered or to argue the case under a new legal theory. See Ryan v. Asbestos Workers Union Local 42 Pension Fund, 2000 WL 1239958, *7 (D. Del.).

In all, Vision is attempting to use a "hindsight assessment" to undo the assumption of the Final Settlement Agreement. This is not a permissible ground for relief under Rule 60(b), and therefore, SMS is entitled to judgment in its favor as a matter of law.

### 2. Vision Is Not Entitled To Relief Under Rule § 105(a).

A bankruptcy court's § 105(a) power must be exercised in manner "consistent with the Bankruptcy Code." In re Morristown & Erie R.R. Co., 885 F.2d 98, 100 (3d Cir. 1989); see also In re Quanta Resources Corp., 739 F.2d 912, 921 (3d Cir. 1984), aff'd sub nom. Midlantic Bank v. New Jersey Dept. of Environmental Protection, 474 U.S. 494 (1986). Section 105(a) does not authorize a bankruptcy court to create "substantive rights that would otherwise be unavailable under the Code," U.S. v. Pepperman, 976 F.2d 123, 131 (3d Cir. 1992), or "rights not otherwise available under applicable law," Southern Railway Co. v. Johnson Bronze Co., 758 F.2d 137, 141 (3d Cir. 1985). In the instant case, Vision seeks to utilize § 105(a) in a manner inconsistent with Rule 60(b). As set forth above, Vision is not entitled to relief under Rule 60(b) as a matter of law. For the same reasons, the pleadings demonstrate that Vision is not entitled to any relief under § 105(a). See, e.g., In re Reinertson, 241 B.R. 451 (9th Cir. BAP

1999)(the bankruptcy court may not use its inherent power to circumvent the limitations of Rule 60(b)).

B. **THE PLEADINGS DEMONSTRATE THAT VISION IS NOT ENTITLED TO DECLARATORY RELIEF CONSTRUING THE ASSUMPTION ORDER.**

In Count VI of the Complaint, Vision alleges that "[o]n multiple occasions, SMS falsely represented that the Assel Mill could meet the Performance Guarantees – at all times a material fact." See Complaint at ¶ 72. As a result, Vision alleges that "SMS should be equitably estopped from arguing that the Assumption Order bars any of the relief requested herein." Id.

Equitable estoppel consists of three essential elements: (1) material misrepresentation; (2) reasonable detrimental reliance; and (3) extraordinary circumstances. See, e.g., Loatman v. Metropolitan Life Ins. Co., 1995 WL 418502, *8 (D.Del.).

In the present case, the pleadings demonstrate that Vision is not entitled to any relief under the theory of equitable estoppel. Although Vision asserts in the Complaint that SMS represented that the Mill would meet the "Performance Guarantees," as set forth in the preceding section, the pleadings and judicial admissions of Vision do not demonstrate this fact. Rather, Vision and SMS executed the Certificate of Final Acceptance, an instrument that by definition manifests an agreement by Vision that the "Work . . . has been completed and has met the performance guarantees." See Ex. A to the Complaint at ¶ I, p. 2. The Certificate of Final Acceptance and the Final Settlement agreement were assumed by Vision after due notice to all creditors. Therefore, SMS is entitled to judgment in its favor on all claims set forth in Count VI.

## V. CONCLUSION

For the foregoing reasons, this Court should grant SMS's Motion for Judgment on the Pleadings as to Counts V and VI of the Complaint.

Dated: December 18, 2003  
       Wilmington, Delaware

REED SMITH LLP

By:/s/ Kimberly E. C. Lawson
Kimberly E. C. Lawson (No.3966)
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: klawson@reedsmith.com

-and-

J. Frank McKenna
PA I.D. No. 17361
Albert Bates, Jr. IV
PA I.D. No. 49908
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131

Attorneys for SMS Demag, Inc.