IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VISION METALS, INC., et al., | ) | Case No. 00-4205 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| VISION METALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 02-6528 |
| v. | ) | |
| | ) | |
| SMS DEMAG, INC., | ) | Re: Docket Nos. 19, 20, and 26 |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF SMS DEMAG, INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS
AS TO COUNTS V AND VI OF THE COMPLAINT**

**I. INTRODUCTION**

Debtor's Memorandum of Law in Opposition to SMS Demag, Inc.'s ("SMS") Motion for Judgment on the Pleadings as to Counts V and VI of the Complaint ("Debtor's Memorandum") confirms that this Court should enter judgment in favor of SMS on Counts V and VI of the Complaint to Recover Avoidable and Fraudulent Transfers and for Related Relief (the "Complaint") (D.I. 1). Debtor apparently admits that the original Complaint is insufficient because Debtor's Memorandum relies

exclusively on "new" allegations contained in the proposed Amended Complaint.[1] Still, Debtor's proposed Amended Complaint does not set forth any changed circumstances sufficient for relief under Fed.R.Civ.P. 60(b), as applicable by Fed.R.Bankr.P. 9024, or § 105(a) of the Bankruptcy Code. Second, the proposed Amended Complaint makes clear that Debtor's claim is now a very limited one for a newly asserted alleged breach of Paragraph 8 of the Final Settlement Agreement. Instead of pleading its cause of action as such, Debtor continues to maintain that it is entitled to recover the contract price and other amounts under the guise that such payments constitute avoidable transfers. Debtor's "new" allegations – which are asserted nearly 3 ½ years after the Certificate of Final Acceptance and the Final Settlement Agreement were assumed by Debtor with the approval of this Court, nearly 15 months after the original Complaint and <u>after</u> and in response to the SMS Motion – are insufficient to defeat the SMS Motion. Accordingly, this Court should enter judgment in favor of SMS on Counts V and VI of the Complaint.

## II. ARGUMENT

### A. Debtor's Opposition Confirms That It Is Not Entitled To Any Relief From This Court's Assumption Order.

The Complaint and the proposed Amended Complaint confirm that Debtor has not established the exceptional circumstances necessary for relief under Fed.R.Civ.P. 60(b), as applicable by Fed.R.Bankr.P. 9024, or § 105(a) of the Bankruptcy Code. After due notice to all creditors, Debtor assumed the Certificate of Final Acceptance and the

---

[1] SMS maintains that Debtor's reliance on the "new" allegations contained in the proposed Amended Complaint is improper because Debtor has not yet obtained leave to file the Amended Complaint. Nevertheless, SMS contends that Counts V and VI of the proposed Amended Complaint suffer from the same defects as Counts V and VI of the original Complaint. For this reason, SMS will address the deficiencies of Debtor's claim. If this Court is inclined to consider the allegations of the Amended Complaint, then SMS should be permitted to respond to the Amended Complaint by motion or otherwise and re-file as appropriate its SMS Demag, Inc.'s Motion for Judgment on the Pleadings as to Counts V and VI of the Complaint ("<u>SMS Motion</u>") (D.I. 19).

Final Settlement Agreement[2] with the approval of this Court. Contrary to Debtor's argument, circumstances have not changed so as to permit Debtor to use a "hindsight assessment" to improperly undo the Final Settlement Agreement which this Court found to be in the best interests of the Debtors, their estates and their creditors.

In Debtor's Memorandum, Debtor argues that circumstances have now changed. See Debtor's Memorandum at p. 15. Yet, the only "changed circumstance" Debtor asserts is the newly alleged inability of the Assel Mill to produce "boiler quality tubing." Debtor now claims for the first time that its difficulty in reorganizing relates directly to SMS's alleged failure to demonstrate that the Assel Mill could produce "boiler quality tubing." Id. at 16.

Under Debtor's new theory,[3] the Assel Mill was not capable of producing "boiler quality tubing" at the time it issued the Certificate of Final Acceptance and entered into the Final Settlement Agreement. Thus, Debtor asserts that a purpose of the Final Settlement Agreement was to make the Assel Mill capable of manufacturing tubing that would meet boiler quality standards. Id. at 8. Debtor looks to Paragraph 8 of the Final Settlement Agreement to support this contention.

> Paragraph 8 of the Final Settlement Agreement provides:
> [Debtor has] requested [SMS] to show that the [Assel Mill]
> is able to process the small diameter / light wall tube with

---

[2] Debtor's unwillingness to accept the finality and legal effect of the Final Settlement Agreement is evidenced by the terminology it uses to refer to the Final Settlement Agreement. Debtor insists on referring to the Final Settlement Agreement as the "First Settlement Agreement." In fact, the title of the document is "Final Settlement Agreement" as evidenced by the true and correct copy of the document attached hereto as Exhibit A. The copy of the document attached to Debtor's papers is not authentic because it omits the title.

[3] The proposed Amended Complaint contains new, non-specific averments concerning SMS's purported representations with respect to the Assel Mill's capabilities to process "boiler quality tubing." Based on these general allegations, Debtor contends that SMS "falsely" represented material facts. These new allegations have not been pled with the requisite particularity contemplated under the Federal Rules of Civil Procedure or Federal Rules of Bankruptcy Procedure, add nothing of substance to the original Complaint and should be ignored by this Court.

3

> the dimension 0.840" x 0.109" (Outer Diameter x Wall
> Thickness). [Debtor] shall allow the production of this tube
> size within September 2000. [SMS is] obliged to give the
> corresponding technical support to [Debtor]. Eventually
> required technical modifications to the [Assel Mill] shall be
> initiated by [SMS] free of charge for [Debtor].

SMS denies that Paragraph 8 of the Final Settlement Agreement creates an obligation on the part of SMS to demonstrate that the Assel Mill is capable of processing "boiler quality tubing." Indeed, Paragraph 8 only relates to the size of the product – one size out of many sizes set forth in the Supply Agreement. Paragraph 4 of the Final Settlement Agreement relates to "quality," and provides, in part: "For the optimization of the tube <u>quality</u> and plant management [Debtor has] placed a direct order with a consultant company named Luftig-Warren." Thus, SMS has no duties or obligations under the Final Settlement Agreement with respect to "quality" of the tubing.

Regardless, based on the plain language of Paragraph 8, it is not a "Performance Guarantee" as argued by Debtor. Rather, it reflects a request on the part of Debtor to SMS to provide technical support to Debtor on a limited time basis. Debtor has not alleged that SMS failed to provide the agreed upon technical support under the Final Settlement Agreement. Thus, Debtor cannot establish the exceptional circumstances necessary for this Court to vacate the Assumption Order under Fed.R.Civ.P. 60(b), as applicable by Fed.R.Bankr.P. 9024, or § 105(a). The cases cited by Debtor do not change this result.

Debtor attempts to argue that this Court should adopt a "liberal standard" under Rule 60(b) in cases where the reorganization might depend on the continued operations of the debtor. See <u>American Bank & Trust Co. v. Lebanon Steel Foundry (In re Lebanon Steel Foundry)</u>, 48 B.R. 520 (M.D. Pa. 1985); <u>C.I.T. Corporation v. Johnson & Morgan Contractors (In re Johnson & Morgan Contractors)</u>, 29 B.R. 372 (M.D. Pa. 1983). However, these cases involve circumstances where the debtor seeks relief from a prior order so that it can use collateral or equipment to continue operations. This "liberal

4

standard" has no application here where Debtor is liquidating its assets (See Debtor's Memorandum at fn. 10) and attempting to undo an arms-length settlement agreement which in no way prevents Debtor from using collateral or equipment to continue its operations.

### B. The Proposed Amended Complaint Makes Clear That Debtor's Claim Is Really One For Breach Of The Final Settlement Agreement, And Therefore, Relief From The Assumption Order Is Unnecessary.

Debtor's allegations in the proposed Amended Complaint focus solely on SMS's alleged failure to demonstrate that the Assel Mill was capable of processing "boiler quality tubing." Relying on Paragraph 8 of the Final Settlement Agreement, Debtor contends that SMS had an obligation to provide continued assistance and support in order to make the Assel Mill capable of manufacturing tubing that would meet boiler quality standards. See Debtor's Memorandum at 8. Amazingly, Debtor never refers to any specific provision of the Supply Agreement, which includes over 200 pages of very detailed specifications regarding quality, for any of its assertions. Instead, Debtor relies on apparent and newly alleged representations. It is inconceivable that if such an allegation were so important to the Supply Agreement that Debtor would not point to some reference in the Supply Agreement.

Moreover, Debtor does not set forth a cause of action for breach of the Final Settlement Agreement. Instead, Debtor continues to maintain that it is entitled to recover the contract price and other amounts under the guise that such payments constitute avoidable transfers. Alleging that SMS somehow failed to fulfill an alleged obligation under the Final Settlement Agreement cannot transform the payments made under the Supply Agreement into avoidable transfers. At best, Debtor has attempted to set forth a claim for breach of Paragraph 8 of the Final Settlement Agreement. Relief from this Court's Assumption Order presumably is not necessary in order to bring such a claim. However, since neither the original Complaint nor the Amended Complaint

5

contain a cause of action for beach of the Final Settlement Agreement, that issue is not before this Court.

### III. CONCLUSION

For the foregoing reasons and the reasons set forth in SMS's Memorandum in Support of SMS Demag, Inc.'s Motion for Judgment on the Pleadings as to Counts V and VI of the Complaint, no basis exists for this Court to vacate or modify its Assumption Order. Accordingly, this Court should enter judgment in favor of SMS on Counts V and VI of the Complaint.

Dated: February 5, 2004
      Wilmington, Delaware

REED SMITH LLP

By: /s/ Kimberly E. C. Lawson
Kimberly E. C. Lawson (No.3966)
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: klawson@reedsmith.com

J. Frank McKenna
PA I.D. No. 17361
Albert Bates, Jr. IV
PA I.D. No. 49908
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131

Attorneys for SMS Demag, Inc.