IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VISION METALS, INC., et al., | ) | Case No. 00-4205 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| VISION METALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 02-6528 |
| v. | ) | |
| | ) | |
| SMS DEMAG, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM IN SUPPORT OF MOTION OF
SMS DEMAG, INC. FOR JUDGMENT ON THE PLEADINGS
AS TO COUNTS I THROUGH IV OF THE COMPLAINT

Dated: September 20, 2004

Kimberly E.C. Lawson (No. 3966)
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: klawson@reedsmith.com

and

J. Frank McKenna
Albert Bates, Jr. IV
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-3131

Counsel for SMS Demag, Inc.

# TABLE OF CONTENTS
Page

Table of Authorities .................................................................................................. ii

I. PRELIMINARY STATEMENT ..................................................................... 1

II. SUMMARY OF ARGUMENT ....................................................................... 1

III. FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

IV. STANDARD FOR JUDGMENT ON THE PLEADINGS ............................... 5

V. ARGUMENT ................................................................................................... 6

    A    VISION HAS FAILED TO ESTABLISH A PRIMA FACIE
         CASE FOR THE CLAIMS SET FORTH IN COUNT I OF THE
         COMPLAINT ....................................................................................... 6

    B.    VISION IS NOT ENTITLED TO ANY RECOVERY FOR
         THE CLAIMS SET FORTH IN COUNT II OF THE COMPLAINT ........ 7

    C.    VISION IS NOT ENTITLED TO ANY RECOVERY FOR
         THE CLAIMS SET FORTH IN COUNTS III AND IV OF THE
         COMPLAINT ....................................................................................... 10

VI. CONCLUSION .............................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

Durkin v. Shields,
    1997 WL 808638 (S.D.Cal.) ......................................................................10

In re Atlanta Retail, Inc.,
    287 B.R. 849 (Bankr. N.D. Ga. 2002) ........................................................9

In re Family Health Food U.S.A. Inc.,
    223 B.R. 250 (Bankr. S.D. Fla. 1998) .........................................................9

In re Farm Fresh Supermarkets of Maryland, Inc.,
    257 B.R. 770 (Bankr. D. Md. 2001) ...........................................................7

In re Knudson,
    943 F.2d 877 (8th Cir. 1991) ......................................................................8

In re One Bancorp Securities Litigation,
    151 B.R. 1 (D. Me. 1993) .........................................................................10

In re Roth American, Inc.,
    975 F.2d 949 (3d Cir. 1992) .......................................................................8

Kimmelman v. The Port Authority of New York and New Jersey (In re: Kiwi International Air Lines, Inc.),
    344 F.3d 311 (3d Cir. 2003) .......................................................................6

Regalbuto v. City of Philadelphia,
    937 F.Supp. 374 (E.D.Pa. 1993) ................................................................5

Sullivan Associates, Inc. v. Dellots, Inc.,
    1997 WL 778976 (E.D. Pa.) (citing Conley v. Gibson, 355 U.S. 41 (1957) ............5

**Statutes**

11 U.S.C. 363(c)(1) ..............................................................................1, 7, 8, 9

11 U.S.C. 365 ..........................................................................................3, 6, 10

11 U.S.C. 547(b) .......................................................................................1, 4, 6, 7

11 U.S.C. 548 ..........................................................................................5, 10

11 U.S.C. 549 ..........................................................................................1, 4, 7

Fed.R.Bankr.P. 7012 ............................................................................................5

Fed.R.Civ.P. Section 12(b)(6)............................................................................5

Fed.R.Civ.P. Section 12(c) ................................................................................5

Texas Uniform Fraudulent Transfer Act ("TUFTA"),
    Sections 24.005, 24.006 and 24.008 ......................................................5, 10

# I. PRELIMINARY STATEMENT

On November 11, 2002, Plaintiff Vision Metals, Inc. ("Vision") commenced this adversary proceeding against Defendant SMS Demag, Inc. ("SMS") for avoidance and recovery of various transfers and for relief from the Court's Assumption Order dated January 31, 2001 ("Assumption Order"). The pleadings demonstrate that Vision has failed to state a claim upon which relief may be granted for the preferential, post-petition, and fraudulent transfer claims set forth in Counts I through IV of the Complaint.

# II. SUMMARY OF ARGUMENT

1. Vision cannot establish a prima facie case under Section 547(b) of the Bankruptcy Code relative to the "First Settlement Transfers" or the "Preferential Transfers" set forth in Count I of the Complaint because the Certificate of Final Acceptance and the Final Settlement Agreement were assumed by Vision and approved by this Court.

2. Vision cannot avoid, under Section 549 of the Bankruptcy Code, the "Second Settlement Transfers" set forth in Count II of the Complaint as the Minutes Agreement was executed in the ordinary course of Vision's business under Section 363 of the Bankruptcy Code. In addition, Vision cannot avoid, under Section 549 of the Bankruptcy Code, the "Post-Petition Transfers" set forth in Count II of the Complaint as the Certificate of Final Acceptance and the Final Settlement Agreement were assumed by Vision and approved by this Court.

3. Since Vision assumed the Certificate of Final Acceptance and the Final Settlement Agreement after notice to all the creditors and with the approval of this Court,

1

Vision cannot now challenge the transfers as fraudulent. Accordingly, judgment should be granted on the claims set forth in Counts III and IV of the Complaint in favor of SMS and against Vision.

### III. FACTUAL AND PROCEDURAL BACKGROUND

On or about December 10, 1997, Vision and SMS entered into an Agreement for Supply of Equipment for an Assel and Stretch Reducing Mill Project (the "Supply Agreement"). See Exhibit A to the Complaint. Pursuant to the Agreement, SMS was to supply certain equipment for an Assel Mill and Stretch Reducing Mill (the "Project" or the "Mill"). Id.

On or about August 17, 2000, Vision and SMS executed a Certificate of Final Acceptance for the Project, agreeing that Final Acceptance as defined in the Supply Agreement had been achieved. See Exhibit B to the Complaint. Pursuant to the Supply Agreement, Final Acceptance means the date that SMS demonstrated by way of performance testing that all "Work ... has been completed and has met the performance guarantees ..." See Exhibit A to the Complaint at ¶ I, p.2. Thus, as of August 17, 2000, Vision agreed that the Mill met any "Performance Guarantees."

Also, on or about August 17, 2000, Vision and SMS entered into a settlement agreement concerning the Supply Agreement ("Final Settlement Agreement"). See Exhibit B to the Complaint. Under the Final Settlement Agreement, SMS agreed to provide certain assistance to Vision free of charge and to forego the final $864,300.00 payment due from Vision. Id. The assistance, which consisted of a maximum total number of four (4) man months at the mill, was to terminate by August 31, 2001. Id. at ¶ 2. SMS agreed to provide additional assistance on a cost plus basis. Id. The Final Settlement Agreement also contained provisions concerning the supply of spare parts for the Mill. Id. at ¶¶ 5-6.

2

In addition, the Final Settlement Agreement contained a release of claims and obligations between the parties. Specifically, Vision and SMS agreed that "with the exception of the claims and/or obligations listed under the present Final Settlement Agreement no further claims and/or obligations shall exist between [Vision] and [SMS]." See Exhibit B to the Complaint at p. 3/3, ¶ 13.

On November 13, 2000, Vision and its affiliated debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On January 17, 2001, Vision filed a motion with the Court seeking authority to assume the Certificate of Final Acceptance and the Final Settlement Agreement pursuant to Section 365 of the Bankruptcy Code (the "Assumption Motion"). See Exhibit C to the Complaint.

On January 31, 2001, the Court granted the Assumption Motion and the Certificate of Final Acceptance and the Final Settlement Agreement were deemed to be assumed contracts. See Exhibit D to the Complaint. In the Assumption Order, the Court specifically found that "assumption of the [Certificate of Final Completion and Final Settlement Agreement] by the Debtors is in the best interests of the Debtors, their estates and their creditors." See Exhibit D to Complaint.

On or about March 7, 2001, Vision and SMS entered into a Minutes of Meeting and Agreement ("Minutes Agreement"). See Exhibit E to the Complaint; Answer at ¶ 26. The Minutes Agreement concerned additional support SMS was to provide to Vision and the supply of spare parts for the Mill. The purpose of the Minutes Agreement was to allow Vision to continue the day-to-day operations of the Mill.

On December 18, 2003, SMS filed a Motion for Judgment on the Pleadings as to Counts V and VI of the Complaint. In Count V, Vision sought to vacate the Assumption Order. In Count VI, Vision sought a declaratory judgment that SMS

should be equitably estopped from arguing that the Assumption Order bars Vision from asserting claims.

By Opinion and Order dated July 14, 2004, this Court granted SMS's Motion for Judgment on the Pleadings as to Counts V and VI of the Complaint. This Court held that under the Final Settlement Agreement, Vision expressly agreed that SMS had met the performance guarantees contained in the Supply Agreement. See Opinion at 8. This Court also found that "[Vision] assumed the Supply Agreement and [Final] Settlement Agreement and waived any right to argue that [SMS] had not completed its obligations under the Supply Agreement." Id. at 9.

Because this Court found that assumption of the Supply Agreement and the Final Settlement Agreement was in the best interests of Vision and because Vision failed to demonstrate exceptional circumstances, this Court concluded that there was no basis to vacate the Assumption Order. Id. Furthermore, this Court held that Vision cannot now raise issues it waived in the Final Settlement Agreement. Id. at 12.

SMS now moves for judgment on the pleadings as to Counts I through IV of the Complaint. In Count I of the Complaint, Vision seeks avoidance and recovery of allegedly preferential transfers pursuant to Section 547(b) of the Bankruptcy Code. See Complaint at ¶¶ 28-33. The transfers consist of the so called "First Settlement Transfers" (Certificate of Final Acceptance and the release contained in the Final Settlement Agreement) and the "Preferential Transfers" (two (2) payments allegedly made to SMS in September 2000 totaling $26,718.00). Id.

In Count II of the Complaint, Vision seeks avoidance and recovery of post-petition transfers pursuant to Section 549(a) of the Bankruptcy Code. See Complaint at ¶¶ 34-39. The transfers consist of the so-called "Second Settlement Transfers" (the release contained in the Minutes Agreement) and the "Post-Petition

Transfers" (thirteen (13) payments allegedly made to SMS from December 29, 2000 through October 30, 2001 totaling $151,177.71). Id.

In Count III of the Complaint, Vision seeks avoidance and recovery of allegedly fraudulent transfers pursuant to § 548 of the Bankruptcy Code. See Complaint at ¶¶ 40-48. The allegedly fraudulent transfers consist of the "First Settlement Transfers" and the "Preferential Transfers." Id.

In Count IV of the Complaint, Vision seeks avoidance and recovery of allegedly fraudulent transfers pursuant to Sections 24.005, 24.006 and 24.008 of the Texas Uniform Fraudulent Transfer Act ("TUFTA"). The transfers consist of the so-called "State Fraudulent Transfers" (twenty-one (21) payments allegedly made to SMS from February 3, 1998 through October 8, 1999 totaling $15,467,755.87).

As set forth below, the pleadings demonstrate that SMS is entitled to judgment as a matter of law on all claims set forth in Counts I through IV of the Complaint.

## IV. STANDARD FOR JUDGMENT ON THE PLEADINGS

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure, after the pleadings are closed, a party may move for judgment on the pleadings if no material facts remain at issue and the parties' dispute can be resolved on both the pleadings and those facts of which the court can take judicial notice. A motion under Rule 12(c) is generally treated in the same manner as a Rule 12(b)(6) motion to dismiss. See Regalbuto v. City of Philadelphia, 937 F.Supp. 374, 376-77 (E.D.Pa. 1993). "Although the court must construe the complaint in a light most favorable to the plaintiff, it need not accept as true legal conclusions or unwarranted factual inferences." See, e.g., Sullivan Associates, Inc.

v. Dellots, Inc., 1997 WL 778976 (E.D. Pa.) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## V. ARGUMENT

### A. VISION HAS FAILED TO ESTABLISH A PRIMA FACIE CASE FOR THE CLAIMS SET FORTH IN COUNT I OF THE COMPLAINT

Vision cannot establish a prima facie case under Section 547(b) of the Bankruptcy Code relative to the "First Settlement Transfers" or the "Preferential Transfers" set forth in Count I of the Complaint because the Certificate of Final Acceptance and the Final Settlement Agreement were assumed by Vision and approved by this Court. The "First Settlement Transfers" consist of the Certificate of Final Acceptance and the release contained in the Final Settlement Agreement. The "Preferential Transfers" consist of two (2) payments allegedly made to SMS in September 2000 totaling $26,718.00, which were made under or pursuant to the Final Settlement Agreement.

Pursuant to Section 547(b)(5), Vision must prove that the "First Settlement Transfers" and the "Preferential Transfers" allowed SMS to receive "a greater return on its debt that it would have received if the transfer had not taken place and it had received a distribution under a Chapter 7 liquidation." Kimmelman v. The Port Authority of New York and New Jersey (In re: Kiwi International Air Lines, Inc.), 344 F.3d 311, 317 (3d Cir. 2003). Under the Assumption Motion, Vision sought and obtained authority to assume the Certificate of Final Acceptance and the Final Settlement Agreement. In order to assume the Certificate of Final Acceptance and the Final Settlement Agreement, Vision was required to cure all defaults under the agreements and provide adequate assurance of future performance. 11 U.S.C. Section 365(b)(1). If Vision had not made the payments alleged to be preferential transfers in Count I of the Complaint, Vision would have been required to cure such defaults as a condition precedent to the

6

assumption of the Certificate of Acceptance and the Final Settlement Agreement. Id. at 316. Therefore, Vision cannot satisfy the requirements of Section 547(b)(5) and judgment should be entered in favor of SMS on all claims asserted in Count I of the Complaint.

### B. VISION IS NOT ENTITLED TO ANY RECOVERY FOR THE CLAIMS SET FORTH IN COUNT II OF THE COMPLAINT

Vision cannot avoid, under Section 549 of the Bankruptcy Code, the "Second Settlement Transfers" set forth in Count II of the Complaint as the Minutes Agreement was executed in the ordinary course of Vision's business under Section 363 of the Bankruptcy Code. See 11 U.S.C. § 363(c)(1). In addition, Vision cannot avoid, under Section 549 of the Bankruptcy Code, the "Post-Petition Transfers" set forth in Count II of the Complaint as the Certificate of Final Acceptance and the Final Settlement Agreement were assumed by Vision and approved by this Court. See 11 U.S.C. § 549(a).

The transfers at issue in Count II of the Complaint consist of the "Second Settlement Transfers" (the release contained in the Minutes Agreement) and the "Post-Petition Transfers" (thirteen (13) payments allegedly made to SMS from December 29, 2000 through October 30, 2001 totaling $151,177.71).

The Final Settlement Agreement was entered into by the parties on or about August 17, 2000. From December 29, 2000 through March 7, 2001 (the date of the Minutes Agreement), Vision allegedly made six (6) payments to SMS totaling $79,049.90. Vision cannot establish a prima facie case under Section 549 of the Bankruptcy Code relative to these payments because these payments were made under and pursuant to the Final Settlement Agreement assumed by Vision and approved by this Court. As a result, they are not subject to avoidance. See 11 U.S.C. § 549(a). See, e.g., In re Farm Fresh Supermarkets of Maryland, Inc., 257 B.R. 770, 772-73 (Bankr. D. Md.

2001) (post-petition payment was not avoidable inasmuch as payment was authorized by the court in connection with motion to approve lease assignment); In re Knudson, 943 F.2d 877, 878 (8th Cir. 1991) (trustee could not avoid post-petition security interest granted by debtors where court approved the grant of interest).

With respect to the remaining seven (7) payments allegedly made to SMS from April 11, 2001 through October 30, 2001 totaling $72,127.81, they were either made under and pursuant to the Final Settlement Agreement and therefore are not subject to avoidance, or they were made in the ordinary course of business pursuant to the Minutes Agreement. Either way, they are not subject to avoidance.

In addition, the "Second Settlement Transfers" were made in the ordinary course of business pursuant to the Minutes Agreement and are not subject to avoidance. The Minutes Agreement was entered into by the parties on or about March 7, 2001. Under the Minutes Agreement, SMS agreed to provide additional assistance to Vision. The Minutes Agreement also contained provisions relating to the supply of spare parts. The purpose of the Minutes Agreement was to allow Vision to continue the day-to-day operations of the Mill.

"[S]ection 363 is designed to allow a trustee (or debtor-in-possession) the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight, while protecting creditors by giving them an opportunity to be heard when transactions are not ordinary." In re Roth American, Inc., 975 F.2d 949, 952 (3d Cir. 1992). Neither the Bankruptcy Code nor the legislative history provide a framework for analyzing whether a transaction is in the ordinary course of business. The Third Circuit, however, has developed a two-part inquiry, including a "horizontal dimension" test and a "vertical dimension" test, for determining whether a transaction is in the ordinary course of business under Section 363(c)(1). Id. The horizontal dimension test

8

focuses on whether, from an industry wide perspective, the transaction is "of the sort commonly undertaken by companies in that industry." Id. at 953. The vertical dimension test (or creditor's expectation test) focuses on the vantage point of a hypothetical creditor and inquires whether the transaction subjects the creditor to economic risk of a nature different from those the creditor accepted when it decided to extend credit to the debtor. Id. The execution of Minutes Agreement satisfies the "horizontal dimension" test because such agreements are common in the industry. The execution of the Minutes Agreement satisfies the "vertical dimension" test because the execution of the Minutes Agreements did not subject Vision's creditors to any economic risk of a different nature from the risks such creditors accepted when they extended credit to Vision. Thus, the Minutes Agreement was entered into by the parties in the ordinary course of business under Section 363 and the "Second Settlement Transfers" are not subject to avoidance. See, e.g., In re Family Health Food U.S.A. Inc., 223 B.R. 250, 251 (Bankr. S.D. Fla. 1998) (post-petition payments made by Chapter 11 debtor in order to continue operating its business were not avoidable as unauthorized post-petition transfers); In re Atlanta Retail, Inc., 287 B.R. 849, 856-58 (Bankr. N.D. Ga. 2002) (promotional agreement between Chapter 11 debtor-camera retailers and association of restaurant owners was in the ordinary course of business under § 363(c); similarly situated debtor would have entered into the agreement and creditors would have reasonably expected debtors to continue marketing and advertising).

As the "Second Settlement Transfers" and the "Post-Petition Transfers" were made pursuant to or under the Final Settlement Agreement or in the ordinary course of Vision's business, they are not avoidable. Accordingly, judgment should be entered in favor of SMS for all claims contained in Count II of the Complaint.

## C. VISION IS NOT ENTITLED TO ANY RECOVERY FOR THE CLAIMS SET FORTH IN COUNTS III AND IV OF THE COMPLAINT

In Count III of the Complaint, Vision seeks avoidance and recovery of the "First Settlement Transfers" and the "Preferential Transfers" as allegedly fraudulent transfers pursuant to Section 548 of the Bankruptcy Code. In Count IV of the Complaint, Vision seeks avoidance and recovery of the "State Fraudulent Transfers" under TUFTA. The "State Fraudulent Transfers" consist of twenty-one (21) payments allegedly made to SMS from February 3, 1998 through October 8, 1999 totaling $15,467,755.87. Because Vision received a reasonably equivalent value in exchange for the transfers, they are not fraudulent as a matter of law.

In order to prevail under Section 548 of the Bankruptcy Code or TUFTA, Vision must establish that it did not receive reasonably equivalent value in exchange for the transfers. However, a settlement cannot be set aside as a fraudulent conveyance where the court approved the settlement and found that it was in the best interests of the debtor and its creditors. See, e.g., In re One Bancorp Securities Litigation, 151 B.R. 1, 3 (D. Me. 1993) (Chapter 11 debtor's settlement agreement, consummated pre-petition, could not be set aside as fraudulent conveyance on the ground that debtor did not receive equivalent value; the court had already approved the settlement after assessing claims and finding that settlement was fair and reasonable); Durkin v. Shields, 1997 WL 808638 (S.D.Cal.) (precluding a claim for fraudulent transfer where the court had already determined that the settlement was an exchange for reasonably equivalent value).

Here, on January 17, 2001, Vision filed a motion seeking authority to assume the Certificate of Final Acceptance and the Final Settlement Agreement pursuant to Section 365 of the Bankruptcy Code (the "Assumption Motion"). See Exhibit C to the

Complaint. In the Assumption Motion, Vision stated that "[i]t is the Debtors' business judgment that assumption of the [Certificate of Final Acceptance and Final Settlement Agreement] is in the best interests of their estates and creditors." See Assumption Motion at ¶ 10 (Exhibit C to the Complaint).

On January 31, 2001, the Court granted the Assumption Motion and the Certificate of Final Acceptance and the Final Settlement Agreement were deemed to be assumed contracts. See Exhibit D to the Complaint; see also Opinion at p. 9 ("In fact, the Debtor argued, and the Court found, that the assumption of the Supply Agreement and the First Settlement Agreement was in the best interest of the Debtor."). In the Assumption Order, the Court specifically found that "assumption of the [Certificate of Final Acceptance and Final Settlement Agreement] by the Debtors is in the best interests of the Debtors, their estates and their creditors." See Exhibit D to Complaint.

The "First Settlement Transfers," the "Preferential Transfers" and the "State Fraudulent Transfers" all relate to either the Supply Agreement or the Final Settlement Agreement. Since Vision assumed the Certificate of Final Acceptance and the Final Settlement Agreement after notice to all the creditors and with the approval of this Court, Vision cannot now challenge the transfers as fraudulent. Accordingly, judgment should be granted on the claims set forth in Counts III and IV of the Complaint in favor of SMS and against Vision.

## VI. CONCLUSION

For the foregoing reasons, this Court should grant SMS' Motion for Judgment on the Pleadings as to Counts I though IV of the Complaint.

Dated: September 20, 2004
       Wilmington, Delaware

REED SMITH LLP

By: /s/ Kimberly E. C. Lawson
    Kimberly E.C. Lawson (No. 3966)
    1201 Market Street, Suite 1500
    Wilmington, Delaware 19801
    Telephone: (302) 778-7500
    Facsimile: (302) 778-7575
    E-mail: klawson@reedsmith.com

and

J. Frank McKenna
Albert Bates, Jr. IV
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-3131

Counsel for SMS Demag, Inc.